IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAZIRAH-SAHAR MUTAZZ,<br><br>               PLAINTIFF,<br><br>V.<br><br>AMAZON.COM SERVICES LLC;<br>MERCEDES MACKIE; DAN ZALINKSI;<br>and ANIBAL BURGOS,<br><br>               DEFENDANTS. | CIVIL ACTION NO.<br><br>PLAINTIFF DEMANDS<br>A TRIAL BY JURY |

## COMPLAINT

Plaintiff, Nazirah-Sahar Mutazz, as and for her Complaint against Defendants respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")) and the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1 et seq. ("NJLAD").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district court's jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

3. This court has jurisdiction in that this action involves a Federal Question.

4. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

5. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b), since Defendants are located in this judicial district and all or a substantial part of the events which give rise to the claim herein occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Around November 12, 2020, Plaintiff timely filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

8. The matter was assigned EEOC number 530-2021-00650.

9. Plaintiff by and through her attorney requested that her Charge be simultaneously filed with, "any other State or local agency with whom you have a work sharing agreement as Claimant is making a claim under all applicable rules, regulations, statutes and ordinances that apply to Claimant's facts."

10. Around September 1, 2021, the EEOC issued Plaintiff a Notice of Right to Sue.

11. Around November 3, 2021, Plaintiff timely filed a supplemental charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

12. The continuing acts of employment discrimination reference in Plaintiff's charges of discrimination were committed by the following parties: (1) Amazon.com Services, LLC; (2) Mercedes Mackie; (3) Dan Zalinski; and (4) Anibal Burgos.

13. This action was being commenced within ninety (90) days of Plaintiff receiving the Notice of Right to Sue.

14. Plaintiff has complied with all administrative prerequisites to bring this lawsuit.

15. Plaintiff's State claims are ripe.

## PARTIES

16. Plaintiff, Nazirah-Sahar Mutazz (hereinafter referred to as Plaintiff), is an individual who has resided, at all relevant times, in Burlington County, New Jersey.

17. At all times material, Defendant Amazon.com Services, LLC, (hereinafter "Defendant Amazon") was a foreign business corporation duly existing under the laws of the State of Washington with its principal place of business in Seattle, Washington.

18. At all times material, Respondent A1's primary business office was located at 401 Commerce Drive, Suite 108, Fort Washington, PA 19034.

19. At all times material, Defendant Mercedes Mackie (hereinafter "Defendant Mackie") was an individual female.

20. At all times material, Defendant Mackie was and, upon information and belief still, is employed by Defendant Amazon as a Human Resources employee.

21. At all times material, Defendant Mackie had supervisory authority over Plaintiff.

22. At all times material, Defendant Dan Zalinksi (hereinafter "Defendant Zalinski") was an individual male.

23. At all times material, Defendant Zalinksi was and, upon information and belief, still is employed by Defendant Amazon as a shift supervisor.

24. At all times material, Defendant Zalinksi had supervisory authority over Plaintiff.

25. Defendant Anibal Burgos (hereinafter "Defendant") is an individual male.

26. At all times material, Defendant Burgos was employed by Respondent Amazon.

27. At all times material. Plaintiff was an employee of Defendants.

28. At all times material, Defendants Amazon, Mackie, and Zalinksi were the joint employers of Plaintiff.

## FACTS

29. Around April 16, 2020, Plaintiff was hired by Defendant Amazon as an Associate at Defendant Amazon's ACY2 location in Burlington, New Jersey.

30. Upon information and belief, sometime prior to July 28, 2020, Defendant Burgos was hired by Defendant Amazon.

31. Upon information and belief, at the time Defendant Amazon hired Defendant Burgos, and thereafter, Defendant Amazon knew or should have known of Defendant Burgos' sexual propensities and that he was likely to engage in sexual harassment, sexual discrimination, and/or sexual orientation discrimination.

32. Around July 28, 2020, right after finishing her shift at Defendant Amazon, Plaintiff was having a conversation with her female co-worker, Yolanda Bey (hereinafter referred to as "Ms. Bey"), in Defendant Amazon's cafeteria.

33. During this conversation, Defendant Burgos approached Plaintiff and Ms. Bey, and stated, "I know your type…I know what you want."

34. Plaintiff and Ms. Bey, perplexed by the comment, asked Defendant Burgos what he meant.

35. Defendant Burgos replied, "You the type to want men. You want dick."

36. Plaintiff questioned Defendant Burgos as to whether he was asking her that or telling her that she, "wanted dick."

37. Defendant Burgos responded "No, I know what you want, you want men, you just need a man I know this."

38. Plaintiff, significantly offended and uncomfortable, demanded that Defendant Burgos stop disrespecting her and her sexuality.

39. Upon information and belief, Defendant Burgos was aware that Plaintiff is homosexual.

40. Following this exchange, the three parted ways as Plaintiff felt extremely embarrassed, humiliated, degraded, and distressed.

41. Plaintiff immediately located a Human Resources (hereinafter "HR") employee, Defendant Mackie, to report the sexual harassment by Defendant Burgos.

42. While Plaintiff was detailing the events for Defendant Mackie, Ms. Bey approached and said, "you will never believe what [Defendant Burgos] is saying."

43. Ms. Bey proceeded to tell Plaintiff and Defendant Mackie that Defendant Burgos was going through the office hallways stating, "I know she [Plaintiff] want it. I know she want it."

44. Plaintiff, Defendant Mackie, and Ms. Bey located a security guard for Defendant Amazon.

45. The parties were able to locate security officer Romanus Miles (hereinafter "Mr. Miles").

46. As Plaintiff explained to Mr. Miles what had occurred, Mr. Miles confirmed that Defendant Burgos had stated, "She [Plaintiff] wants me. She wants all of this. I can see it in her eyes."

47. Mr. Miles indicated that he had asked Defendant Burgos whether he was, "referring to himself or men in general."

48. According to Mr. Miles, Defendant Burgos replied "No she [Plaintiff] wants me. She wants all of this. I can see it in her eyes."

49. Prior to this incident, Plaintiff had never met Defendant Burgos, was unaware of who he was, and never had any encounters with him.

50. These comments by Defendant Burgos to other Defendant Amazon employees frightened Plaintiff given Defendant Burgos' brash, threatening and sexually aggressive comments.

51. Defendant Mackie informed Plaintiff that she should make a formal report with HR when she comes in for her shift the following day.

52. In addition, Plaintiff submitted a statement to Defendant Amazon's security.

53. Plaintiff felt extremely uncomfortable and fearful.

54. Plaintiff informed Defendant Amazon's security that she felt unsafe, distressed, and uncomfortable.

55. Defendant Amazon, by and through its employees, failed to take any action to alleviate Plaintiff's fears and address her concerns.

56. By way of example, Plaintiff was forced to walk to her car alone although Defendant Amazon's employees were aware that she was fearful of her safety.

57. Upon information and belief, Defendant Burgos had finished his shift at the same time and his car was in the same parking lot as Plaintiff.

58. Plaintiff also verbally conveyed to Defendant Amazon's security her extreme discomfort and concern for her safety if she were required to continue to work without being made aware of whether Defendant Burgos was in the building.

59. Upon information and belief, Defendant Burgos was permitted to return to work the day after the incident took place without any discipline.

60. Plaintiff was required to report to her next scheduled shift as Defendants disregarded her fears and discomfort.

61. As such, Plaintiff reported to work as scheduled.

62. Immediately upon reporting to work, Plaintiff reported to HR and wrote a formal report with Defendant Mackie.

63. Plaintiff informed Defendant Mackie that she felt unsafe and uncomfortable not knowing if Defendant Burgos was working.

64. Defendant Mackie indicated that she was unsure if Defendant Burgos was working, and that protocol dictated Plaintiff report back to work.

65. Plaintiff further inquired with Defendant Mackie how long the investigation would take and whether she would be required to work despite the significant distress she was feeling.

66. Defendant Mackie was unable to provide Plaintiff with any specific timeline.

67. Upon reporting to her shift, Plaintiff informed her supervisor, Defendant Zalinksi, what had taken place the day before.

68. Plaintiff informed Defendant Zalinksi that she felt unsafe and uncomfortable without knowing if Defendant Burgos was in the building.

69. As such, Plaintiff inquired whether Defendant Burgos was in the building that day.

70. Defendant Zalinksi ignored Plaintiff's concerns and simply responded, "just go to work."

71. As a result of Defendants' actions, Plaintiff worked in a state of stress, lack of focus, fright, and discomfort.

72. Plaintiff was unable to perform work duties to the best of her abilities.

73. As a result, Plaintiff's manager, Troy Last Name Unknown (hereinafter referred to as "Troy"), pulled Plaintiff aside and asked why rates were so low and her TOTs were so high.

74. Plaintiff explained the sexual harassment that took place the day prior.

75. Troy said, "that is inappropriate. You shouldn't even," and then stopped talking.

76. Upon information and belief, Troy was going to state that Plaintiff should not have been required to report to work under such conditions.

77. When Troy stopped mid-sentence, Plaintiff went and found a supervisor in the HR department, John Doe.

78. John Doe informed Plaintiff that he did not have any knowledge of the incident and assured her they would handle it right away.

79. John Doe sent Plaintiff home and informed her that she could stay home until the investigation was complete and the witnesses and Defendant Burgos had been interviewed.

80. Plaintiff received an email from Defendant Mackie apoligizing for HR's delayed repsonse around the time in which Plaintiff was speaking with John Doe.

81. Approximately a week and a half later, Plaintiff reached out to Defendant Mackie to inquire when she could return back to work as she had not heard anything from Defendants.

82. Defendant Mackie informed Plaintiff that it would be a few more days.

83. A few days later Plaintiff was informed she could return to work.

84. Plaintiff was never provided with any information about what, if any, disciplinary action had been taken against Defendant Burgos.

85. As a result, Plaintiff avoided the cafeteria and would go to her car for breaks in an effort to avoid Defendant Burgos.

86. Plaintiff, however, was fearful that Defendant Burgos would follow her to her car.

87. After Plaintiff reported the unlawful behavior of Defendant Burgos, supervisors of Defendant Amazon, including but not limited to Defendant Zalinksi, were noticeably short with her and unapproachable.

88. This made Plaintiff embarrassed and emotionally distressed.

89. This made it difficult for Plaintiff to fulfill her job duties.

90. Plaintiff claims that Defendants unlawfully discriminated and retaliated against her because of her sex/gender, sexual orientation, and because she complained and opposed the unlawful conduct of Defendants related to the above protected classes.

91. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

92. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

93. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition(s).

94. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants jointly and severally.

95. The above are just some examples of the discrimination to which Defendants subjected Plaintiff to on a continuous and on-going basis throughout Plaintiff's employment.

96. Defendants have exhibited a pattern and practice of not only harassment and discrimination but also hostile work environment and retaliation.

97. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

98. Plaintiff claims constructive and/or actual discharge seeks reinstatement.

99. Plaintiff claims alternatively that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiff claim that Defendants owed and breached its duty to Plaintiff to prevent the harassment/discrimination/retaliation and is liable therefore for negligence.

## FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII
### (against Defendant Amazon only)

100. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

101. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of TPC. Plaintiff complains of Defendant Amazon's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

102. SEC. 2000e-2. *[Section 703]* states as follows:

    (a) Employer practices

    It shall be an unlawful employment practice for an employer –

    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges

    of employment, because of such individual's race, color, religion, sex, or national origin; or

    (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

103. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her sex/gender and/or sexual orientation.

104. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**SECOND CAUSE OF ACTION**
**TITLE VII HOSTILE WORK ENVIRONMENT**
**(against Defendant Amazon only)**

105. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

106. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

107. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998)

108. Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action." Andrews v. city of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

109. Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

110. The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

111. Here, Defendants' conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

112. Plaintiff's supervisors had the authority to control Plaintiff's work environment, and they abused that authority to create a hostile work environment.

113. Sexually explicit and verbally- and physically- harassing conduct occurred at Defendant Amazon and was directed at Plaintiff.

114. Defendants knew that the sexually explicit and verbally- and physically- harassing conduct had taken place and failed to address or alleviate her safety concerns.

115. The sexually explicit verbally- and physically- harassing conduct caused Plaintiff to sustain severe emotional distress.

116. Plaintiff subjectively regarded the sexually explicit verbally- and physically- harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

117. The conduct was severe.

118. The conduct was emotionally damaging and humiliating.

119. The conduct unreasonably interfered with Plaintiff's work performance.

120. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

121. The Defendants provided a futile avenue for complaint.

122. The Defendants acted upon a continuing course of conduct.

123. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

### THIRD CAUSE OF ACTION
### RETALIATION UNDER TITLE VII
### (against Defendant Amazon only)

124. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

125. Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

126. 42 U.S.C. § 2000e-3. Other unlawful employment practices:

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or

because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

127. The Supreme Court in Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

128. Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.")

129. Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

130. Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation)

131. "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); and Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

132. An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class.")

133. Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. See Thompson v. North American Stainless, LP, 131 S. Ct. 863, 868 (2011).

134. Here, the Defendants discriminated against Plaintiff because of her protected activity under Title VII.

135. Plaintiff acted under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex/gender and/or sexual orientation was violated.

136. Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

137. Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

138. There was a causal connection between the Defendants' materially adverse actions and Plaintiff's protected activity.

139. The Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

140. The Defendant acted upon a continuing course of conduct.

141. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and the Defendant's actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendant's antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

142. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**FOURTH CAUSE OF ACTION**
**DISCRIMINATION**
**UNDER NEW JERSEY STATE LAW**
**(against all Defendants)**

143. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

144. New Jersey's Law against Discrimination Section 10:5-12(a) sets forth in pertinent part as follows: "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: a) For an employer, because of race, . . . , color, national origin . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful

considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

145. The full statute reads as follows:

**10:5-12. Unlawful employment practices, discrimination.**

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:

    a.  For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment; provided, however, it shall not be an unlawful employment practice to refuse to accept for employment an applicant who has received a notice of induction or orders to report for active duty in the armed forces; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment any person on the basis of sex in those certain circumstances where sex is a bona fide occupational qualification, reasonably necessary to the normal operation of the particular business or enterprise; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment or to promote any person over 70 years of age; provided further that it shall not be an unlawful employment practice for a club exclusively social or fraternal to use club membership as a uniform qualification for employment, or for a religious association or organization to utilize religious affiliation as a uniform qualification in the employment of clergy, religious teachers or other employees engaged in the religious activities of the association or organization, or in following the tenets of its religion in establishing and utilizing criteria for employment of an employee; provided further, that it shall not be an unlawful employment practice to require the retirement of any employee who, for the two-year period immediately before retirement, is employed in a bona fide executive or a high policy-making position, if that employee is entitled to an immediate non-forfeitable annual retirement benefit from a pension, profit sharing, savings or deferred retirement plan, or any combination of those plans, of the employer of that employee which equals in the aggregate at least $27,000.00; and provided further that an employer may restrict employment to citizens of the United States where such restriction is required by federal law or is otherwise necessary to protect the national interest.

146. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

147. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

### FIFTH CAUSE OF ACTION
### RETALIATION
### UNDER NEW JERSEY STATE LAW
### (against all Defendants)

148. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

149. New Jersey's Law against Discrimination Section 10:5-12(d) sets forth that it is unlawful" "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act."

150. Defendants violated this section as set forth herein.

151. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

## SIXTH CAUSE OF ACTION
## AIDING AND ABETTING
## UNDER NEW JERSEY STATE LAW
### (against the individual Defendants only)

152. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

153. New Jersey's Law against Discrimination Section 10:5-12(e) sets forth in pertinent part as follows:

> "Unlawful employment practices, discrimination.  It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:  e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

154. Defendants engaged in an unlawful discriminatory practice by aiding and abetting the discrimination against Plaintiff as set forth herein.

155. Defendants violated all other applicable sections of N.J. Stat. § 10:5-12(e) et. Seq.

156. As such, Plaintiff has been damaged as set forth herein.

157. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

## DEMAND TO PRESERVE EVIDENCE

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage,

employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## JURY DEMAND

Plaintiff Hardy requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  Philadelphia, Pennsylvania  **DEREK SMITH LAW GROUP, PLLC**
November 15, 2021  By:  */s/ Catherine W. Smith, Esq.*

Catherine W Smith, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
catherine@dereksmithlaw.com