IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| _____ : | |
| NAZIRAH-SAHAR MUTAZZ, : | |
| : | |
| Plaintiff, : | |
| : | Civil No. 21-19987 (RBK/SAK) |
| v. : | |
| AMAZON.COM SERVICES LLC; : | **OPINION** |
| MERCEDES MACKIE; DAN : | |
| ZALINSKI; and ANIBAL BURGOS, : | |
| : | |
| Defendants. : | |
| _____ : | |

**KUGLER**, United States District Judge:

Presently before the Court are three motions: Defendants Amazon.com Services LLC, Mercedes Mackie, and Dan Zalinski's Motion to Dismiss (ECF No. 14); Plaintiff Nazirah-Sahar Mutazz's Motion for Default Judgment as to Defendant Anibal Burgos (ECF No. 15); and Defendant Anibal Burgos' Motion to Dismiss (ECF No. 19). For the reasons set forth below, the Defendants Amazon.com Services LLC, Mercedes Mackie, and Dan Zalinski's Motion to Dismiss (ECF No. 14) is **GRANTED**.

## I.    BACKGROUND

This case involves alleged sex discrimination, hostile workplace environment, and retaliation. This background information is taken from the operative Complaint, (ECF No. 11), and the factual allegations are presumed true for the purposes of this motion.

Plaintiff was hired in April 2020 to work as a Fulfillment Associate at Defendant Amazon's Burlington, New Jersey fulfillment center. (*Id.* ¶ 32). Plaintiff is a homosexual woman. (*Id.* ¶ 45).

Defendant Burgos, an Amazon employee, made sexually offensive statements to Plaintiff during an interaction on July 28, 2020. (*Id.* ¶¶ 39, 41, 43). Plaintiff alleges that Amazon did not

take the necessary steps to screen Burgos' job application for prior sexual misconduct in the workplace, (*Id.* ¶ 34), and that Amazon did not take the appropriate steps to remediate the misconduct once it occurred. (*Id.* ¶ 61).

During the incident, Burgos, whom Plaintiff had never met before, (*Id*. ¶ 55), approached her while in conversation with another co-worker and said, "I know your type . . . I know what you want." (*Id*. ¶ 39). When Plaintiff asked what Burgos meant by the comment, Burgos responded, "You the type to want men. You want dick," (*Id.* ¶ 41), and, "No, I know what you want, you want men you just need a man I know this." (*Id.* ¶ 43). Plaintiff asked that Burgos "stop disrespecting her sexuality," (*Id.* ¶ 44), and left the interaction feeling "extremely embarrassed, humiliated, degraded, and distressed." (*Id.* ¶ 46). Plaintiff sought a Human Resources (HR) employee, Defendant Mercedes Mackie, and relayed to her the details of the incident. (*Id*. ¶ 47). Another co-worker, who had been in conversation with Plaintiff at the time of the interaction with Burgos, reported that "Burgos was going through the office hallways stating, 'I know she [Plaintiff] wants it. I know she wants it.'" (*Id*. ¶ 49).

Mackie and Plaintiff then sought assistance from Amazon security personnel. (*Id*. ¶ 50). The security personnel questioned Burgos regarding the incident and confirmed that Burgos had made the remarks. (*Id*. ¶ 52).

Plaintiff felt "unsafe, distressed, and uncomfortable" due to the episode. (*Id.* ¶ 60). Amazon did not take any action to alleviate these feelings despite the fact that she verbally conveyed her concerns to security personnel. (*Id*. ¶¶ 60, 61, 64). For example, Plaintiff cites the fact that she was forced to walk to her car alone, (*Id.* ¶ 62), even though Burgos' shift ended at the same time and his car was parked in the same parking lot as hers. (*Id*. ¶ 63). Additionally, Plaintiff was required

to report to work the day after the incident despite the fears she expressed to Mackie and Dan Zalinski, her supervisor. (*Id.* ¶¶ 66, 69).

The day following the incident, Plaintiff was asked by her Manager, "Troy Last Name Unknown," why her "rates were so low." (*Id.* ¶ 79). When Plaintiff told him of the incident that had occurred the previous day, he said, "'[T]hat is inappropriate. You shouldn't even,' and then stopped talking." (*Id.* ¶ 81). Plaintiff then formally reported the incident to a supervisor in HR, "John Doe," who sent Plaintiff home, informed her that "they would handle it right away," and instructed her that she should remain at home until the investigation was complete. (*Id.* ¶¶ 84, 85). Approximately a week and half later, Plaintiff contacted Mackie, who informed her the investigation would last a "few more days." (*Id.* ¶ 87). A few days later, Plaintiff was told the investigation was complete and she could return to work. (*Id.* ¶ 88).

After returning to work, Plaintiff alleges that her supervisors, including Zalinski, were "noticeably short with her and unapproachable." (*Id.* ¶ 93). Around August 13, 2020, Plaintiff's counsel notified Amazon that she intended to file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and, ultimately, a complaint in the District Court of New Jersey. (*Id.* ¶ 96). Approximately three months later, on November 12, 2020, Plaintiff filed a charge with the EEOC. (*Id.* ¶ 97).

Plaintiff claims that Amazon employees retaliated against her for the filing the EEOC charge. (*Id.* ¶ 98). Plaintiff alleges several instances of retaliation.

One such instance of retaliation occurred on or around November 4, 2020, when Plaintiff injured her finger while at work. (*Id.* ¶ 99). Plaintiff alleges that "Defendant did not want [her] to see a doctor" to have her finger evaluated. (*Id.* at ¶ 100). Plaintiff did, however, consult a doctor and learned that her finger had been fractured. (*Id.* ¶ 101). Plaintiff concedes that Amazon did

make reasonable accommodations for her injury, she but alleges that they "permitted [her] to be discriminated against due to her disability.[1]" (*Id.* ¶ 102).

For example, Plaintiff alleges that while icing her injured finger during the course of her duties, her supervisor, Defendant Amanda Reznyk, approached her and said, "Your rates fucking suck. I got an eighty (80) year old woman that picks faster than you." (*Id.* ¶ 104). When Plaintiff informed the supervisor she was unable to handle certain objects due to her injury, Reznyk instructed her to mark anything she couldn't pick up as "missing." (*Id.* ¶¶ 105, 106). Later, Reznyk, issued a "final written warning" to Plaintiff because she had marked something as "missing." (*Id*. ¶ 108). Plaintiff refused to sign the warning given Reznyk had instructed her to do just that. (*Id.* ¶ 110). Plaintiff reported the incident to HR. (*Id.* ¶ 111).

In another instance of alleged retaliation, that occurred around June, 2021, Plaintiff went to the Amazon Fulfillment Center in Burlington, her place of work, on her day off to deposit paperwork in the HR office. (*Id.* ¶ 112). When Plaintiff arrived, none of the three employees working in the office acknowledged her presence, despite their awareness that she was in the room. (*Id.* ¶ 115). When Plaintiff inquired as to whether any of the employees were going to greet her, one said to another, "[Y]ou can help [Plaintiff], I'm not dealing with her today," (*Id*. ¶ 117), and, to Plaintiff, "[Y]ou always come up here causing trouble." (*Id.* ¶ 119). Afterwards, Defendant Mackie approached Plaintiff and told her she was the "talk of the town" for "cussing out" the employee in the HR office. (*Id.* ¶ 124).

In another alleged instance of retaliation in June of 2021, Plaintiff honked the horn of her car at a coworker, "John Doe 2," who was "taking a long time to perform his work duties." (*Id*. ¶

---

[1] Plaintiff, in her Amended Complaint, clarifies that she does not assert a claim of disability discrimination. Rather, the facts pled regarding Plaintiff's workplace injury are meant to establish a continuing hostile and retaliatory work environment.

127). John Doe 2 responded, "Get off my damn back. I don't give a damn about your picking." (*Id.* ¶ 128). To this, Plaintiff responded, "Can you count your bin so I can be on my way?" (*Id.* ¶ 129). As John Doe 2 proceeded to drive away, he stated, "Come see me. Come see me." (*Id.* ¶ 130). He then "came towards Plaintiff, got in her face, and stated 'What's up? What's up? What's up?'" (*Id.* ¶ 132), which Plaintiff understood as a threat to her physical safety. (*Id.* ¶ 134).

Plaintiff reported the incident to an Amazon Safety Department employee. (*Id*. ¶ 135). The Safety Department employee instructed Plaintiff that she should report the incident to HR, (*Id.* ¶ 138), which she did. (*Id.* ¶ 142). The incident was "confirmed" by video footage as part of the report. (*Id.* ¶ 142). Plaintiff was again sent home, on paid leave, for the duration of an investigation into the incident. (*Id.* ¶¶ 144, 145).

On July 7, 2021, while Plaintiff awaited direction as to when to return to work, Amazon informed Plaintiff that she had been terminated due to job abandonment. (*Id.* ¶ 147). Plaintiff alleges that her termination was in retaliation for her "continued opposition to her hostile work environment." (*Id.* ¶ 148).

Upon discussing her termination with members of the HR department, and relaying the fact that she had never received any communication instructing her to return to work, Plaintiff was told that she could return to work for her next scheduled shift. (*Id.* ¶ 152). Plaintiff was also told that while John Doe 2 had not been terminated, and his shift had not been changed, she was able to pick a different shift to avoid working with him. (*Id.* ¶ 155). After this discussion, Plaintiff checked with the "ERC" to confirm whether her employment status had been updated to reflect the fact that she had not, in fact, been terminated. (*Id*. ¶ 156). The ERC showed that she had. (*Id*. ¶ 160).

Plaintiff appealed the termination and was reinstated on August 8, 2021. (*Id*. ¶ 163). During the appeal period (July 7, 2021 to August 8, 2021), Plaintiff was not permitted to work and did not

receive compensation. (*Id.* ¶ 164). Plaintiff then changed her shift to avoid working with John Doe 2. (*Id.* at 167). The change in shift "caused Plaintiff to suffer a reduction of hours" from forty hours per week to thirty. (*Id.* ¶ 168).

Plaintiff filed a complaint in this Court against Defendants Amazon Services LLC ("Defendant Amazon" or "Amazon"), Mackie, Zalinski, and Burgos on November 15, 2021. (ECF No. 1). On February 11, 2022, counsel appeared on behalf of Defendants Amazon, Mackie, and Zalinski, but not Defendant Burgos. Defendants Amazon, Mackie, and Zalinski filed a motion to dismiss the complaint on February 14, 2022. (ECF No. 10). Plaintiff filed an amended complaint against all existing Defendants and added Defendant Reznyk on February 28, 2022. (ECF No. 11). On March 2, 2022, Plaintiff requested default against Defendant Burgos, (ECF No. 12), which the clerk of the Court entered on March 18, 2022. On March 28, 2022, Defendants Amazon, Mackie, and Zalinski again moved to dismiss. (ECF No. 14). The same day, Plaintiff moved for default judgment as to Defendant Anibal Burgos. (ECF No. 15). Defendant Burgos moved to dismiss on the same grounds as the other defendants. (ECF No. 19).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

For employment discrimination claims, "a complaint need not establish a prima facie case in order to survive a motion to dismiss." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). A prima facie case is "an evidentiary standard, not a pleading requirement," *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002), and hence is "not a proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789.

Rather, "[a]n employment discrimination complaint . . . must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. Rule Civ. P. 8(a)(2); *see also Swierkiewicz*, 534 U.S. at 508. Courts in this Circuit have held that "the post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s].'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

## III.    DISCUSSION

Plaintiff has brought six separate causes of action under Title VII (counts I, II, III) and the New Jersey Law Against Discrimination (NJLAD) (counts IV, V, VI). Because New Jersey courts "have frequently looked to case law under Title VII . . . for guidance in developing standards to govern the resolution of [NJLAD] claims," the Court will analyze the Title VII and NJLAD claims together where appropriate. *Carmona v. Resorts Int'l Hotel, Inc.*, 189 N.J. 354, 370 (2007); *see also Cortes v. Univ. of Med. & Dentistry of New Jersey*, 391 F. Supp. 2d 298, 311 (D.N.J. 2005) ("The analysis which is applied in Title VII claims is equally applicable to actions brought under other civil rights statutes, and thus the Title VII analysis applies to claims brought under the NJLAD as well.").

### A. Counts I and IV - Gender Discrimination under Title VII and the NJLAD

Plaintiff alleges that Defendants discriminated against her on the basis of her sex and sexual orientation. Defendants counter that Plaintiff cannot attribute any of the alleged adverse employment actions to her sex or sexual orientation, and thus has failed to state a claim.

Title VII makes it unlawful for employers to "discriminate against any individual with respect to compensation, terms, conditions or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1).

To establish a prima facie case of gender discrimination under Title VII or the NJLAD, a plaintiff must establish that: "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Jones v. Sch. Dist. Of Phila.*, 198 F.3d 403, 410-411 (3d Cir. 1999).

Here, there is no dispute with respect to the first two elements. Plaintiff is a woman, and thus a member of a protected class under Title VII, and there is no indication that she was unqualified for her position. The parties disagree, however, as to whether any of the conduct complained of constitutes an adverse employment action, and whether such actions give rise to an inference of unlawful discrimination.

The question on this motion to dismiss, then, is whether Plaintiff has alleged facts from which the Court can make a reasonable inference that discovery will yield evidence of the third and fourth elements.

### a.  Adverse Employment Action

An adverse employment action is one which "is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Gross v. City of Jersey City*, Civ. No. 18-9802, 2019 WL 2120312, at *4 (D.N.J. May 15, 2019) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). Such an action must constitute "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 328 (3d Cir. 2015) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Here, Plaintiff argues that adverse employment actions include her supervisors becoming "noticeably short and unapproachable," and a waging a "campaign of retaliation" against her, which included:

> Refusing to properly address[] Plaintiff's workplace injury, writing Plaintiff up for alleged 'poor performance' . . . failing to address Plaintiff's concerns of workplace retaliation, Defendant Mackie spreading rumors about Plaintiff, failing to take prompt remedial action regarding Plaintiff's complaint of a co-worker's threat of physical violence, terminating Plaintiff, not compensating Plaintiff for the period

of time she was unlawfully terminated, and requiring Plaintiff to work with her aggressor or take a reduction of hours.

(ECF No. 16 at 15).

Plaintiff does not allege that her job responsibilities changed in degree or manner. However, Plaintiff does allege that her compensation and benefits were deprived in two instances: first, when she was not paid while her mistaken termination was on appeal (a period of just over one month), and second, when she was forced to change her shift to avoid working with John Doe 2, which resulted in a reduction of hours (from forty to thirty hours per week).

Taking the Plaintiff's factual allegations as true, these actions are adverse employment actions within the meaning of the statutes. Being deprived of compensation for a period of over one month would constitute significant change in benefits that affects the employee's compensation and the associated privileges of employment. Importantly, there must also be a factual link between the alleged adverse employment actions and the protected characteristic— here, the Plaintiff's sex or sexual orientation. Accordingly, the Court turns to the fourth element of a prima facie claim for discrimination.

### b.  Inference of Discrimination Element

With respect to the fourth element, a Title VII plaintiff has met her pleading burden when she offers "evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the [Civil Rights] Act [of 1964]." *E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 348 (1977)).

In *Guirguis v. Movers Specialty Services, Inc.*, an Egyptian-born employee of Arab descent was terminated from his accounting position at a moving company. Civ. No. 08-4154, 2008 WL 11453651, at *2 (E.D. Pa. Dec. 12, 2008), *aff'd* 346 Fed. App'x 774, 775 (3d Cir.2009). The

employee filed suit, alleging that he had been terminated on account of his race and national origin. *Id.* The Third Circuit Court of Appeals affirmed dismissal of the complaint, finding that the "complaint never intimates in any way why Guirguis believes that national origin motivated Movers' actions," and that such "factually unsupported legal conclusion[s]" were insufficient to defeat a motion to dismiss. 346 Fed. App'x at 776.

Similarly, in *Baig v. Nuclear Regulatory Commission*, a former employee of a federal agency brought suit claiming that he was wrongfully terminated on the basis of his nationality and age. Civ. No. 10–0842, 2011 WL 2214660 (D.N.J. June 6, 2011). The court granted the defendant's motion to dismiss, reasoning that the complaint offered only "conclusory assertions" and did not allege any specific acts that would provide a connection between plaintiff's race and age and his termination. *Id*. at *4.

In *Simon v. Saint Dominic Academy*, the employee filed suit under the NJLAD alleging age and religious discrimination, among other claims. Civ. No. 19-21271, 2020 WL 4382288 (D.N.J. July 29, 2020). The court dismissed the plaintiff's age discrimination claim, finding that her allegation that she was "replaced by a younger employee" conclusory and thus insufficient to infer discrimination. *Id.* at *3. The court also dismissed the religious discrimination claim, noting that the plaintiff failed allege that "others outside her protected class were treated differently." *Id*. at *4. *See also Dalton v. New Jersey*, Civ. No. 174094, 2018 WL 305326, at *7 (D.N.J. Jan. 5, 2018) (dismissing gender discrimination claim where plaintiff "fail[ed] to allege any facts supporting an inference that the alleged discriminatory conduct was the result of her gender").

On the other hand, in *Angrand v. Paragon Village*, an employee of a nursing home was fired following an incident in which a patient's relative complained that several employees were "hang[ing] out" in her mother's room. Civ. No. 09–1118, 2010 WL 1644132, at *1 (D.N.J. Apr.

22, 2010). The employee, an African–American man from Haiti, alleged that of the employees involved, only he was terminated while the other two employees, both white, were not punished. *Id*. In addition, the employee alleged other incidents of disparate treatment, specifically referring to an instance in which he was sent home early while white employees were not. *Id.* In denying the nursing home's motion to dismiss, the court held that the employee had made specific factual allegations that raised the inference of discrimination. *Id.* at 3–4.

And in *Graves v. Ancora Psychiatric Hosp.*, the employee, an African-American woman, alleged that she was denied certification as a civil service employee and was terminated on the basis of her race and gender. Civ. No. 10-369, 2012 WL 6153428, at *3 (D.N.J. Dec. 11, 2012). The plaintiff alleged facts that she was terminated without the opportunity to be certified even though white and male employees were not subjected to the same treatment. *Id.* The court denied the defendant's motion to dismiss, finding that the complaint alleged "specific instances in which she claims she was treated differently than white employees." *Id.*

Here, Plaintiff claims that the statement of her supervisor, Troy Last Name Unknown, when she told him of the July 28 incident gives rise to an inference of unlawful discrimination. As detailed in the Factual Background section of this opinion, Troy Last Name Unknown, when told of the incident said, "That is inappropriate. You shouldn't even . . . ." Plaintiff argues that this comment suggests that "complaints of other employees, not based on gender or sexual orientation," are treated differently. *Id.*

This statement alone is insufficient to support an inference of discrimination. Plaintiff does not allege any additional facts that plausibly infer that other employees, or other complaints, were treated differently from her own or other members of her protected class. Put simply, Plaintiff's

claim resembles the conclusory allegations from which courts in this Circuit have declined to find an inference of discrimination.

Accordingly, Defendants' motion to dismiss Counts I and IV is **granted**.

### A.  Count II - Hostile Work Environment under Title VII

Plaintiff levies her hostile work environment claim against Defendant Amazon only. Plaintiff alleges she was subjected to a hostile work environment on the basis of sex. She bases her claim on the July 28, 2020 interaction with Defendant Burgos, and,

> Defendants [sic] failure to vet Defendant Burgos, to address other employees [sic] complaints of Defendant Burgos' sex discrimination . . . Defendants [sic] indifference to Plaintiff when they allowed Defendant Burgos' [sic] to remain employed, Defendants failure to take prompt remedial action, . . . Defendants [sic] failure to address Plaintiff's safety concerns, . . . to properly address Plaintiff's workplace injury, writing Plaintiff up for alleged "poor performance". . . failing to address Plaintiff's concerns of workplace retaliation, Defendant Mackie spreading rumors about Plaintiff, failing to take prompt remedial action regarding Plaintiff's complaint of a co-worker's threats of physical violence, terminating Plaintiff, not compensating Plaintiff for the period of time she was unlawfully terminated, and requiring Plaintiff to work with her aggressor or take a reduction of hours.

(ECF No. 16). In addition, Plaintiff premises her hostile work environment claim on Defendant Amazon's "upper-management," who she alleges "participated in wrongful conduct or was willfully indifferent to wrongful conduct." (*Id.* at 7-8). Plaintiff alleges that by failing to conduct a "thorough background check" on Burgos; failing to contact Burgos' former employers, who the Plaintiff asserts would have revealed that Burgos had been "accused of sexual harassment at his previous place(s) of employment;" failing to take prompt remedial action against Burgos; and failing to "inform Plaintiff of Defendant Burgos' employment status," Amazon's upper-management created a hostile work environment. (*Id.*).

Defendant Amazon counters that Plaintiff cannot show that the discrimination was severe or pervasive, and that there is no factual basis upon which to find *respondeat superior* liability.

Before proceeding to the elements of a hostile work environment claim, the Court will address the briefed issues regarding the continuing violation doctrine and the *Faragher/Ellerth* defense.

### a.  Continuing Violation Doctrine

Plaintiff asserts the continuing violation doctrine, arguing that because she reported Defendant Burgos' sexual harassment incident, it may be included as part of Plaintiff's hostile working environment claim against Defendant Amazon.

Defendant argues that the continuing violation doctrine is not applicable because the doctrine allows a plaintiff to bring a Title VII hostile work environment claim based on conduct that occurred outside the statute of limitations period, "as long as it was part of a pattern of harassment that occurred within the limitations period . . . not for a plaintiff to support a sexual harassment claim with alleged harassment that is not based on sex." (ECF No. 23, at 5)

The continuing violation doctrine is properly invoked "[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct." *Wilson v. Wal-Mart Stores*, 158 N.J. 263, 729 A.2d 1006 (1999). In such instances, "the statute of limitations does not begin to run until the wrongful actions cease." *Id*.

Here, however, there is no issue regarding the statute of limitations. The parties do not dispute that Plaintiff has complied with the EEOC's guidelines regarding exhaustion of remedies or that any of the alleged conduct occurred outside of the relevant statute of limitations. Accordingly, the continuing violation doctrine is not applicable.

### b.  *Faragher/Ellerth* Defense

Plaintiff argues that Defendant has improperly raised the the *Faragher/Ellerth* defense. This defense shields an employer from liability if no tangible employment action is taken and "(a)

14

[] the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) [] the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998). Plaintiff argues that this is an affirmative defense which may only be raised in an answer, not a motion to dismiss, pursuant to Federal Rule of Civil Procedure 8(c).

Defendant argues not only that affirmative defenses may be raised in 12(b)(6) motions so long as the defense appears on the face of the complaint, but that resolving that issue is unnecessary given Amazon does not rely on the defense for the purposes of this motion—rather, Amazon argues that Plaintiff has failed to allege facts sufficient to establish *respondeat superior* liability, which is an element of a prima facie claim. (ECF No. 23, at 8).

"Generally speaking, [courts] will not rely on an affirmative defense . . . to trigger dismissal of a complaint under Rule 12(b)(6)." *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (internal quotations and citations omitted). However, "[a] complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face." *Id.*

Regardless, here, Defendant Amazon does not purport to raise an affirmative defense in its Motion to Dismiss. Rather, Amazon argues Plaintiff must allege facts that give rise to *respondeat superior* liability, which is an element required to state a valid claim, and Plaintiff has failed to do so. Accordingly, the Court will assess the elements of the claim, keeping in mind the pleading standard discussed above.

**c.   Elements of a Hostile Workplace Environment Claim**

To state a hostile work environment claim under Title VII, the plaintiff must show that "(1) [she] suffered intentional discrimination because of [her] sex; (2) the harassment was severe or

pervasive; (3) the harassment detrimentally affected the plaintiff; (4) the harassment would detrimentally affect a reasonable person of the same [sex] in that position; and (5) the existence of *respondeat superior* liability." *Moody v. Atlantic City Board of Education*, 870 F.3d 206, 213 (3d Cir. 2017)*.* "The first four elements establish a hostile work environment, and the fifth element determines employer liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

The question becomes whether Plaintiff has alleged facts from which the Court can make a reasonable inference that discovery will yield evidence of the elements of the claim. The Court will focus its analysis on the second and fifth elements given Defendants dispute them in their Motion to Dismiss.

### d. "Severe or Pervasive" Discrimination

"A plaintiff bringing a hostile work environment claim under Title VII must allege harassment that is severe or pervasive." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 752 (1998); *see also Graves v. Ancora Psychiatric Hosp.*, Civ. No. 10-369, 2012 WL 6153428 (D.N.J. Dec. 11, 2012). To violate Title VII, the harassment must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' that permeates the workplace." *Graves*, 2012 WL 6153428*,* at *4 (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).

The Third Circuit has held that "harassing conduct may be either severe *or* pervasive to qualify under the second prong," and that "even a single instance of harassment can suffice to state a claim." *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (emphasis added). However, "[i]n evaluating a hostile work environment claim under both Title VII . . . and the NJLAD, both the Supreme Court and the Third Circuit have been clear that 'offhand comments, and isolated

incidents (unless extremely serious)' are not sufficient." *Nuness v. Simon & Schuster, Inc*, 221 F. Supp. 3d 596, 601 (D.N.J. 2016) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

In evaluating whether a work environment is hostile or abusive, "courts look to totality of the circumstances, which should include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.'" *Nuness v. Simon & Schuster, Inc*, 221 F. Supp. 3d 596, 601 (D.N.J. 2016) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013)).

In this case, Plaintiff's allegations, taken as true, do not meet the standard required to state a prima facie case of hostile workplace environment, nor is it plausible for this Court to infer that discovery would yield evidence sufficient to do so. The interaction with Defendant Burgos, while highly inappropriate, was singular, isolated, and the subject of internal investigation which, apparently, put an end to the behavior. As for the conduct attributed to the other defendants, Plaintiff does not allege any facts to suggest that it was motivated by her sex or sexual orientation. Rather, the latter instances reflect the type of inappropriate or rude behavior that should not be condoned or tolerated, but does not itself rise to the level of a hostile workplace environment. *See Hargrave v. County of Atlantic*, 262 F. Supp. 2d 393, 412 (D.N.J. 2003) (explaining that "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex or race") (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998)); *Dalton v. New Jersey*, 2018 WL 305326, at *9 ("Verbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motived by the plaintiff's gender (or membership in other protected groups).").

17

Because Plaintiff has not alleged facts which make it plausible for the Court to infer that the alleged discrimination was severe or pervasive, her hostile work environment claim fails.

## B.  Counts III and V - Retaliation under Title VII  and NJLAD

Plaintiff makes claims of retaliation under both Title VII and the NJLAD. Again, "[b]ecause New Jersey courts have frequently looked to case law under Title VII for guidance in developing standards to govern the resolution of LAD claims," the Court will analyze the Title VII and NJLAD retaliation claims together. *Stallone v. Camden Cty. Tech. Sch. Bd. of Educ.*, Civ. No. 12-7356, 2013 WL 5178728, at *3 (D.N.J. Sept. 13, 2013).

Plaintiff argues that her communication to Amazon, via her attorney, of her intent to file an EEOC charge; her complaint of sexual harassment against Defendant Burgos; her complaints of retaliation; her report of the incident with John Doe 2; and her "opposition to her unlawful termination" constitute protected actions for which she was retaliated against. Plaintiff claims to rely on a "broad array of evidence to demonstrate the causal link between her protected activity and the Defendant's actions taken against her," such as "the unusually suggestive proximity in time between events," and "Defendant's antagonism and change in demeanor towards Plaintiff after Defendants became aware of Plaintiff's protected activity." (ECF No. 11 ¶ 220).

The alleged retaliatory acts are as described above. Plaintiff again advocates for application of the continuing violations doctrine. Based on the discussion above, and for the same reasons, the Court finds that the continuing violation doctrine does not apply to this claim, although the Court considers all the well-pleaded factual allegations in its analysis.

Defendants counter, with respect to Defendant Reznyk, that there is no factual basis to suggest that Reznyk was aware of the protected activity. (ECF No. 23 at 10). Therefore,

Defendants argue, Plaintiff cannot establish a causal connection between her protected activity and the alleged retaliatory action engaged in by Reznyk.

With respect to Defendants Mackie and Zalinski, Defendants concede that Mackie and Zalinski were aware of the protected activity, but argue that none of the conduct attributed to them constitutes retaliation within the meaning of Title VII or the NJLAD.

### a. Elements of a Retaliation Claim

Title VII prohibits an employer from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by [Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a); *see also Lombard v. New Jersey Dep't of Transp.*, Civ. No. 1801319, 2018 WL 5617553, at *7 (D.N.J. Oct. 30, 2018).

The NJLAD's retaliation provision states that is unlawful for,

> [a]ny person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has sought legal advice regarding rights under this act, shared relevant information with legal counsel, shared information with a governmental entity, or filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J.S.A. 10:5-12.

"To establish a claim of retaliation under either statute, a plaintiff must show that she (1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) that there is a causal connection between her participation in the protected activity and the adverse employment action." *Lombard*, 2018 WL 5617553, at *7; *see also Dalton v. New Jersey*, Civ. No. 174094, 2018 WL 305326, at *10 (D.N.J. Jan. 5, 2018); *Daniels v. Sch. Dist. Of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015).

The question becomes whether Plaintiff has alleged facts from which the Court can make a reasonable inference that discovery will yield evidence of the elements of the claim.

### b.  Protected Activity

For the purposes of this motion, Defendants have not challenged that Plaintiff's filing of a Charge of Discrimination with the EEOC constitutes a protected activity. However, Plaintiff claims that her complaint of sexual harassment against Defendant Burgos; her complaints of retaliation; her report of the incident with John Doe 2; and her "opposition to her unlawful termination" also constitute protected actions.

"[P]rotected 'opposition' activity includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). Importantly, "[t]he complaint must allege that the opposition was to discrimination based on a protected category, such as age or race." *Id.* While "a plaintiff in a retaliation case 'need not prove the merits of the underlying discrimination complaint,' she must have 'act[ed] under a good faith, reasonable belief that a violation existed.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Moore v. City of Phila.*, 461 F.3d 331, 344 (3d Cir. 2006)).

However, Title VII "does not set forth 'a general civility code for the American workplace.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Accordingly, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* Rather, "[t]he antiretaliation provision seeks to prevent employer interference

with 'unfettered access' to Title VII's remedial mechanisms." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 338 (1997)). Thus, for a complaint to constitute a protected activity, it must implicate an employment practice made illegal by Title VII. *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). "A general complaint of unfair treatment is insufficient to establish protected activity under Title VII." *Id.*

With respect to Plaintiff's other claimed protected activities, even accepting the allegations as true, she has failed to claim that she was retaliated against due to her complaints about conduct prohibited by Title VII.

Plaintiff claims that she was retaliated against based on her complaints of retaliation. The Court construes this to refer to the present lawsuit. The Complaint, however, fails to allege facts that show that she has been subject to any adverse employment actions since the instigation of the suit.

Plaintiff claims that she was retaliated against for her report of the incident with John Doe 2, however, there are no facts to suggest that this incident was in any way motivated by Plaintiff's sex or sexual orientation.

Finally, Plaintiff claims that she was retaliated against for her opposition to her temporary termination, but, again, there is no factual basis upon which the Court can infer the existence of unlawful discrimination.

In short, in each instance Plaintiff does not allege that someone not of her sex or sexual orientation would have been treated differently. Accordingly, these actions cannot form the basis of a retaliation claim. This leaves the filing of a charge of discrimination with the EEOC as the sole protected activity.

**c.  Adverse Employment Action**

To show an adverse employment action, "a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions materially adverse in that they well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Suri v. Foxx*, 69 F. Supp. 3d 467, 481 (D.N.J. 2014) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Examples of adverse employment actions in the context of retaliation include: cancelling an employee's health insurance, a thirty-seven-day suspension without pay, and reassignment to more arduous and less desirable duties. *Shnaidman v. State, Dep't of Human Servs., Div. of Mental Health Servs.*, A-4120-11T4, 2013 WL 1776098, at *8 (N.J. Super. Ct. App. Div. Apr. 26, 2013) (internal citations omitted). However, "[p]etty slights, minor annoyances, and simple lack of good manners" will generally not support a retaliation claim. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. at 68 (2006).

Dismissive and otherwise rude behavior generally does not rise to the level of adverse employment action. *See Dicks-Kee v. New Jersey Judiciary*, Civ. No. 12-6620, 2014 WL 7339458, at *8 (D.N.J. Dec. 23, 2014) (finding interrupting plaintiff, talking down to her, raising one's voice, and being dismissive of plaintiff did not constitute adverse employment actions); *McKinnon v. Gonzales*, 642 F. Supp. 2d 410, 428 (D.N.J. 2009) (finding "intensified" supervision of plaintiff, micromanaging of plaintiff's whereabouts, and "accosting" and "harassing" plaintiff about time and attendance matters did not constitute adverse employment actions).

Here, considering the lower standard imposed in retaliation claims, Plaintiff's temporary termination without pay for one month may well dissuade a reasonable worker from making or supporting a charge of discrimination. However, the other complained of conduct—"refusing to properly address[] Plaintiff's workplace injury, writing Plaintiff up for alleged 'poor performance'

22

. . . failing to address Plaintiff's concerns of workplace retaliation, Defendant Mackie spreading rumors about Plaintiff, failing to take prompt remedial action regarding Plaintiff's complaint of a co-worker's threat of physical violence, . . . and requiring Plaintiff to work with her aggressor or take a reduction of hours"—do not rise to the level of adverse employment actions.

Specifically, with respect to Plaintiff receiving a written warning for marking an item as missing, the facts do not suggest that the reprimand was overtly malicious or for any reason other than Plaintiff was falling below her supervisor's job expectations. And, with respect to Defendants' alleged failure to address Plaintiff's complaints about John Doe 2, the Complaint concedes that a report was filed and an investigation was conducted. Whether Plaintiff considers the results of the investigation satisfactory or adequate does not affect the analysis. "[T]he employer's remedy does not need to be adequate from the complainant's perspective." *Roadman v. Select Specialty Hosp.*, Civ. No. 3:16-246, 2020 WL 571058, at *5 (W.D. Pa. Feb. 5, 2020).

The other alleged examples of adverse employment actions fall in the category of "[p]etty slights, minor annoyances, and simple lack of good manners," which are insufficient to sustain a retaliation claim. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. at 68 (2006).

Importantly, the adverse employment actions must also be causally linked to the protected activity Plaintiff engaged in. Accordingly, the Court turns its attention to its analysis of the third element of a prima facie retaliation claim.

### d. Causation

The third element requires Plaintiff to show a causal connection between her protected activity and the employer's adverse action. "A plaintiff may establish the requisite causal connection by showing a close temporal proximity between the protected activity and the alleged retaliatory conduct, or by submitting 'circumstantial evidence . . . that give[s] rise to an inference

of causation.'" *Suri v. Foxx*, 69 F. Supp. 3d 467, 481 (D.N.J. 2014) (quoting *Lacy v. Nat'l R.R. Passenger Corp.*, 254 Fed. Appx. 934, 937 (3d Cir.2007)).

Only if the individual responsible for the adverse employment action was aware of the protected activity can causation logically be shown. *See Omogbehin v. Dimensions Int'l, Inc.*, Civ. No. 08-3939, 2009 WL 2222927, at *6 (DN.J. July 22, 2009) (dismissing Title VII retaliation claim because the plaintiff failed to allege that the defendant was aware of his protected activity); *Woods v. Bentsen*, 889 F. Supp. 179, 188-89 (E.D. Pa. 1995) (finding that the plaintiff failed to establish a causal link because she failed to establish the supervisor acting adversely against her was aware of an EEOC charge).

Here, as explained above, the sole protected activity is Plaintiff's filing of a charge of discrimination with the EEOC. There are no facts to suggest that Defendant Reznyk knew of the protected activity, and thus the Court cannot infer any alleged retaliatory act. Regardless, Reznyk's action—writing Plaintiff up for poor performance—does not constitute an adverse employment action, and there are no facts to suggest that it was motivated by her sex or sexual orientation.

As for Defendants Zalinski and Mackie, with respect to a temporal inference, the alleged retaliatory action—Plaintiff's temporary termination—did not occur until roughly a year after they became aware of her protected activity, which does not lend itself to an inference of causality. Nor, for that matter, are there any facts which suggest that Zalinski or Mackie were involved in Plaintiff's termination.

With respect to an inference based on circumstantial evidence, Plaintiff asserts that causation can be inferred from Amazon's pattern of antagonism. However, "[i]n order to demonstrate a 'pattern of antagonism,' [a] Plaintiff must put forth evidence such as a 'constant barrage of written and verbal warnings . . . and disciplinary action[s] . . . soon after plaintiff's initial

complaints.'" *Marley v. Donahue*, Civ. No. 14-1597, 2017 WL 2106125, at *6 (D.N.J. May 12, 2017), *aff'd sub nom. Marley v. Postmaster Gen. of United States*, 747 Fed. App'x. 901 (3d Cir. 2018) (quoting *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993)). Further, "[a] pattern of antagonism . . . is more than a series of disciplinary actions; a plaintiff must 'offer [a] basis for linking the disciplinary actions to her [protected activity].'" *Id.* (quoting *Barton v. MHM Correctional Servs., Inc.*, 454 F. App'x 74, 79 (3d Cir. 2011)).

Here, Plaintiff has not provided the necessary nexus between her protected action and the alleged adverse employment action. Accordingly, Defendants' motion to dismiss is Counts III and V is **granted**.

### C.  Count VI - Aiding and Abetting Claim under the NJLAD

Plaintiff asserts claims of aiding and abetting under NJLAD against Defendants Mackie, Zalinski, Reznyk, and Burgos. Specifically, Plaintiff alleges that Defendants Mackie and Zalinski failed to respond appropriately to Defendant Burgos' conduct and contributed to the hostile workplace environment, and that Defendant Amazon failed to conduct a thorough background check on Burgos prior to hiring him and exhibited "willful indifference to the safety of its employees" by allowing Burgos to remain employed after the July 28 incident.

Defendants counter, first, that because Plaintiff cannot establish liability against Amazon, she cannot establish liability against individual defendants as a matter of law, and, second, that Plaintiff has failed to allege facts showing that individual defendants "knowingly and substantially assisted in any discriminatory conduct." (ECF No. 14, at 25-26).

NJLAD § 10:5-12(e) states, "It shall be unlawful employment practice, or, as the case may be, an unlawful discrimination: e) For any person, whether an employer or employee or not, to aid,

abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or attempt to do so." N.J.S.A. 10:5-12.

If primary liability is found to exist on behalf of the employer, a plaintiff can establish aiding and abetting liability by showing that an individual defendant "knowingly and substantially" assisted the principal violation giving rise to the primary liability. V*alentine v. State, Dep't of Corr.*, A-4681-07T2, 2009 WL 1108452, at *6 (N.J. Super. Ct. App. Div. Apr. 27, 2009).

For a defendant to be liable for aiding and abetting under the NJLAD, the plaintiff must show "(1) the employer whom the defendant aided performed a wrongful act causing an injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation." *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 645 (2008) (citing *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)).

Here, the first element of the claim—that the employer whom the defendant aided performed a wrongful act causing an injury—proves fatal to Plaintiff's claim. Because this Court has dismissed discrimination claims with respect to Amazon, Plaintiff's aiding and abetting claim cannot survive.

For these reasons, Defendants' motion to dismiss Count VI is **granted**.

## IV.   CONCLUSION

For the reasons set forth above, Defendants Amazon.com Services LLC, Mercedes Mackie, and Dan Zalinski's Motion to Dismiss (ECF No. 14) is **GRANTED**. An order follows.

Dated: 7/12/2022                                  /s/ Robert B. Kugler
                                                  ROBERT B. KUGLER
                                                  United States District Judge